We will hear the cases in the sequence of the document sheets starting with United States v. Awad. May I please reserve three minutes for rebuttal? May I, Your Honors? Please watch the clock. Thank you so much. Good morning, Your Honors. May it please the Court. Your Honors, the District Court's one-level downward departure for substantial assistance under 5K1.1 of the sentencing guidelines in this case constituted error in two significant respects. First, the departure represented an incomplete exercise of discretion by the District Court in looking to a potential Rule 35B motion for cooperation that had already been given prior to sentencing. And second, this disregard of 5K1.1's temporal mandate touched upon Mr. Awad's due process rights. Accordingly, Mr. Awad's claim that the District Court imposed an unconstitutional sentence is clearly subject to review by this Court, and Mr. Awad respectfully urges this Court to remedy this constitutional infringement by vacating his sentence and remanding for a resentencing. Counsel, the plea agreement, was there anything in the plea agreement that required cooperation? No, there was not, Your Honor. There was absolutely no requirement on the government's part, no promise made whatsoever. In fact, it was after the plea was entered that the decision was made, apparently, for Mr. Awad. It was the government's own motion to depart downward one level that precipitated the ultimate sentence in this case. It, in fact, was, Your Honor. But that is, respectfully, that is really not relevant to the determination that we're asking this Court to make in that once the government moves for the downward departure, regardless of whether it had a prior obligation to consider it or not, once it actually takes that affirmative step of filing and making the motion for downward departure, which it did in this case, it is the District Court's obligation, of course, to consider that motion, which it did, and to make a determination. The prosecutor is divested of decision-making once that motion is filed regarding the ultimate level or degree of the departure. In other words, once the government moves for a departure, it asks for one level here. It's now within the Court's, District Court's discretion entirely to determine whether zero levels, one level, or additional levels are appropriate. So what's there to review at that point? To review, in this case, Your Honor, what there is to review is a fundamental infringement of Mr. Awad's due process rights. Okay. Spell that out so we understand precisely what your argument is. Certainly, Your Honor. Basically, what the argument is, is that the Court, in ruling on the government's 5K1.1 motion, erred, and not only erred, but in the process that it utilized or employed, infringed upon Mr. Awad's due process rights in that the downward departure that was given was for one portion of the cooperation. During the sentencing hearing, the prosecutor explained to the Court that it was seeking, specifically, and in the sentencing papers, that it was seeking a one-level departure for specific cooperation involving information that was submitted in support of an affidavit for a complaint that, in fact, was, as the prosecutor indicated. No errors so far. No errors so far. All right. The prosecutor indicated that was merely corroborative information, but, in fact, the government had determined it was substantial assistance entitling a one-level downward departure. When raised by defense counsel or when defense counsel raised with the Court at sentencing, the fact that he had learned through exhibits submitted with the sentencing papers by the government and in discussing the case in the cooperation with the government, that, in fact, during those proper sessions in that cooperation, Mr. Awad provided substantially more cooperation on related and unrelated matters pertaining to narcotics trafficking that was not at all connected to the assistance that provided the basis for the one-level departure. So is this a temporal – does it boil down to a temporal issue? In other words, assistance provided up to that point needs to be considered, and you can't delay it and piggyback it onto a later consideration. Is that basically what you're saying? That is precisely it, Your Honor. That is precisely the essence of the argument. I couldn't have said it better. And that is that the due process violation here is the – or is the confusion, so to speak, or the merging of the temporal framework between what the – would not have been able to relate back to the pre-sentence cooperation? That is correct, Your Honor. And this Court followed other circuits in United States v. Crackett, followed a long line of other circuit cases, specifically explaining that there is a distinct temporal framework, and, in fact, Rule 35 was amended at the same time that the sentencing guidelines went into effect. And Rule 35 was amended in such a way that it divested the court of the authority to, on its own motion, re-sentence a defendant. Wait a minute. I'm looking at Rule 35b-3, which is the current version of the rule. I can't tell when this was amended. But in evaluating whether the defendant has provided substantial assistance, the court may consider the defendant's pre-sentence assistance. There's nothing that bars pre-sentence assistance as an element in the 35b motion. To the extent, Your Honor, that the cooperation that forms the basis or that the – to the extent that the cooperation necessarily succeeds the sentencing, in other words, if a defendant provides information to the government, and that information ultimately is information that the government desires to use by way of the defendant's testimony in a subsequent trial, in a later trial that perhaps is not scheduled for six months down the line, and perhaps the defendant's looking at – or regardless of the circumstances, when the defendant is provided information, that – let me begin again, Your Honors. The cooperation that that provision refers to is cooperation that is not complete. And, in fact, that is the position that the government has taken in its response brief here, and that is that, in fact, the cooperation that Mr. Awad is referring to, that he didn't get credit for, was cooperation that was not complete, that the government couldn't really determine, you know, how useful and material that information would have been until post-sentencing, presumably for purposes of other defendants being arrested, prosecuted, and the defendant assisting in that regard. That is different and distinct, Your Honor, from cooperation that, at the time of sentencing, is complete. And as Your Honors know, that cooperation under 5K1 and substantial assistance need not and often does not involve anything – any affirmative actions on the defendant's part, proactive cooperation, even testimony. Counsel, you're down about two and a half minutes. Thank you. And I am going to limit my argument – remainder of my argument to this issue, Your Honors, and allow and ask that the other issue be submitted on the briefs. Very good. And I would like to save a little bit of time for rebuttal, but I will just clarify or conclude by stating, Your Honor, that here, in no uncertain terms, the prosecutor, at the sentencing hearing, specified, and in fact has done so in the response brief, that the cooperation that defendant did not get credit for was cooperation and assistance that was more helpful. They had already made a determination, the government, that the information that was far more helpful, the government said, than that which formed the basis for the one-level downward departure. That cooperation, if the determination that it was far more helpful had already been made, then that entitled the defendant to at least consideration by the government and the court as to what level of any additional departure should have been made for that cooperation. That aspect was complete, Your Honors. Thank you, counsel. Thank you. Please be seated. Please declare Tom O'Brien for the government. In this case, Your Honor, although there was no cooperation language in the plea agreement, the government did determine there was substantial assistance provided to the government at the time of sentencing. We did file a 5K motion. In that motion, we outlined every single detail of the cooperation provided by the defendant, and that we actually attached the proper session notes to the EA6 to the 5K motion. The defendant received at sentencing all the credit he was entitled to for substantial assistance provided to the government at the time of sentencing, which is the obligation. What's your response to Ms. Law's comment that that's not quite right, that he gave more assistance than he was credited for? Your Honor, I was the prosecutor who handled this case from filing on up, and I was the prosecutor who made the statement at sentencing. I agree with Ms. Law that if, in fact, I did misspeak at the sentencing hearing. If the defendant had provided much more cooperation or much more substantial assistance at the time of sentencing, then he would be entitled to additional downward levels. I agree with that. However, I did misspeak. What I should have said was that the defendant had provided in his interview potentially much more helpful information to the government. And, in fact, the information provided by the defendant never yielded any results, never yielded anything to date which the government would consider to be substantial assistance. I thought one of your arguments, this is where I'm confused now between what happened in the trial court and in your brief. I thought one of your arguments in the brief was, well, that we should determine when the government realized the value as opposed to when the communication of the information was given, which is a time, a temporal issue. So what is your position as to the point in time that you measure the communications? Your Honor, the case law, the Drown case, as well as the Quatch case, indicates that the government needs to determine at the time of sentence whether substantial assistance had been provided. We cannot postpone that decision. I believe in both those cases the government attempted to defer even filing a 5K and waiting for all the cooperation to be developed. In this case the government did make the decision at the time of sentence, correctly, that substantial assistance had been provided. We did file a motion, a 5K motion, although the defendant did not bargain for that. And in that motion we provided all the information on substantial assistance. We indicated in that motion, which is hopefully a little bit more clear than what I indicated at sentencing itself, that the defendant had provided substantial assistance to the government on a Florida ring. We also explained that there was additional information and anticipated cooperation that could not be measured at the time of sentencing on the Columbus, Chicago ring. So the problem I have there in trying to read that in conjunction with Rule 35 is, as I read it you would say that information offered by Mr. Awad before the sentencing, but that might yield value later, you're going to try to pick up on a Rule 35 potentially. Correct. But I would read Rule 35 as not permitting that. I respectfully disagree with the Court. What the government needs to do, I guess I can put it in terms of hypothetically what could have happened at this case and probably in line of what happens in all cases. Defendants come in, they proffer information roughly three, four, five weeks before sentencing. We arrive at the sentencing as we did here. The government has possession of this information, but the agents now have to go out and develop the information to see if it's viable information, to see if it's valuable information. Potentially we could get to the sentencing hearing as here and determine that there was no substantial assistance to date at the time of sentencing. Under Mr. Awad's argument, the correct determination would then be, well, we'll just put the whole sentencing, we'll continue it for another three or four or five months. Now, in this particular case, of course, neither the government nor defense counsel could offer any particular date when this information would be developed. But assuming we came back in three or four or five months and at that point the defendant had, let's say, testified once before the grand jury, we could not then, according to the defendant, make a 5K motion and determine all substantial assistance because potentially three or four or five months down the line the defendant would testify in front of the grand jury again or in an actual jury trial. Defendant's theory, I believe, here is to require the government and the district court to wait until all the cooperation is complete, grand jury, investigation, Title III, sentencing, before the government makes a 5K. And that flies in the face of the law and flies actually in the face of Rule 35. But you said in your brief that he'd given this information about the drug ring in Chicago and Columbus, but you can't measure it at the present time. So that leads me to wonder, is the benchmark the provision or is the benchmark the net payoff to the government? The benchmark is the payoff to the government, Your Honor. We need to determine whether there is substantial assistance at the time of sentencing. And that's what the Ninth Circuit as well as the First Circuit and the other circuits have determined. We cannot postpone that decision. Now, in this case, we did determine, Your Honor, that a 5K was to be filed, there was substantial assistance. And I could respectfully remind the court that all the information, all the cooperation was provided to Judge Reel. As Ms. Law said correctly, once the government files a 5K, in some terms it's out of our hands. It's up to the district court to then determine whether or not the district court is going to make a downward departure and the amount of the downward departure. In this particular case, the district court ruled that the defendant was going to receive one level and, in quote, defendant is not entitled to any other downward departure for the question of cooperation. All right. On that specific ruling, we have an abuse of discretion standard, right? Right. And I believe, Your Honor, the district court here had the entire, listen to the argument of the government as well as the argument of the trial counsel, defense counsel. But in particular, in this case, Judge Reel also had the entire proffer agreement, which this court has, consisting of approximately seven pages. The district court reviewed all seven pages, listened to arguments, the motion, and determined correctly that the substantial assistance provided to the government at time of sentencing was limited correctly to approximately one level. And that's the level that the district court. Well, let me ask you, in light of counsel's concerns that maybe there was more cooperation, and only the two of you will know that, is it still possible to have a Rule 35 correction? At this date, I believe it is, Your Honor. Let's say that if the defendant comes forward in the next month, or the DEA reaches out through our office to the defendant through counsel, we need some additional information, or we need you to testify on some information, we would offer that would be substantial assistance if you were to testify. At that point, the government would file a Rule 35. I would point out to the court. There's a one-year limit with respect to one level or one aspect, and then you can file after a year, I gather, as well. But do you have any problem with the notion that if this cooperation, in fact, was pre-sentence and it wasn't somehow recognized in the 5K1, that that could be taken into account? Absolutely. As the Court indicated earlier, Rule 35b3 spells that out specifically. The district court could do that. And I would also offer, Your Honor, I don't think that one-year statute of limitation would apply in this particular case because, for instance, if substantial assistance were provided by the defendant and he was asked to testify against one of the folks in Chicago-Columbus, that would be an opportunity he did not have within the one year. So, therefore, we could file the Rule 35. I would point out respectfully to this Court, as we did in the brief, that as of today's date, there has been no additional substantial assistance provided by the defendant. Should this Court send this back down to Judge Reel, the government would intend to file a Rule 5K again because I think that is fair. Based on all the substantial assistance at the time of sentencing, in a month it would be the same as it was almost two-and-a-half years ago, which would be one level. Let me just go back and make sure I understand your position. On Rule 35, your position is that you could take into account cooperation that occurred prior to sentencing as opposed to distinctly additional cooperation? That's correct, Your Honor. To be clear, the government's term of substantial assistance needs to be determined at the time of sentencing to have the government file a Rule 5K. And those are the cases that the government cited as well as defense counsel, involving essentially the benefit of the bargain. In those cases, the defendant, in a plea agreement, offered cooperation and the government was obligated to file a Rule 5K. Well, maybe I'm misunderstanding your argument then because if you look at the Quatch, or however it's said, and the Downs case, which is out of the First Circuit but cited in the Ninth Circuit case, they make a distinction and basically say that 5K 1.1 is for assistance rendered prior to sentencing and Rule 35B recognizes subsequent cooperation. And what you're saying is that Rule 35B can sweep in pre-sentence cooperation. May I respond? I'm just trying to understand your position. May I respond to the Court? My time is up. Certainly, please. Thank you. Your Honor, under Rule 35B3, it is the government's position that the post-substantial assistance, which is substantial assistance provided to the government post-sentencing hearing, Rule 35 can and should, in fact, be filed by the government. At that time, the district court can measure the post-sentencing substantial assistance provided to the U.S. government and the district court can also consider the prior-to-sentence cooperation in that Rule 35. And I think that's spelled out clearly in the Rule 35B3. Looking at some of the notes on that statute, apparently this was amended in 1998 so that the Drown case, which is a 1991 case, perhaps may be affected by the 98 Amendment to the provision. Is that your understanding? That is my understanding, Your Honor. All right. Well, anything further? No, sir. Thank you, counsel. Thank you. Ms. Wall, you have some reserved time. Commissioner, Your Honor, I don't believe that the more recent amendment, although I don't have case authority to cite, Your Honor, but the 1998 amendment allowing for a Rule 35 motion based on assistance that pre-sentence, that that in any way invalidates the law under the Quatch or Downs opinions. Why wouldn't that be the remedy for your client, the B3, Rule 35B3, if things come to pass? Perhaps it would, Your Honor, but in the real world, with all due respect, having been a prosecutor at the U.S. Attorney's Office for a number of years, the likelihood, even the possibility that under the circumstances of this case, the challenges raised, the conclusion already made by the government in opposing the defendant's appeal, in having to go through this appellate process, and in light of the fact that there has not been additional cooperation on other matters or whatnot, even the possibility of that happening for Mr. Awad is so remote, it's virtually nonexistent. And again, I would just emphasize that the law is still clear under this circuit, as Your Honor pointed out, which is that the benchmark is, in fact, the provision of the information, not the payoff to the government. And here, there was complete cooperation as far as assistance provided, information provided. It led to a detention of an individual in Los Angeles. Other information out of Chicago regarding 18 individuals. Can I ask you about that? If that is a correct statement, that you don't really look at the time of subsequent payoff, why wasn't it sufficient to have all the information in front of the district court, which was provided here? And the information was there, and the district court could make a decision, and it did make a decision of one level. How do we say that's an abuse of discretion? In that, Your Honor, and as Your Honor questioned the prosecutor regarding the standard and myself regarding the abuse of discretion, in that the district court here had the discretion to give additional levels, but it is clear from the state of the record from the explanation provided by the prosecutor, not the explanation he provided today, which the district court did not have before it, as to misspeaking, but the information provided at sentencing, the district court imposed sentence granting the one-level departure with an eye towards a future Rule 35, as indicated by the prosecutor. The prosecutor indicated that we are continuing, we will evaluate that cooperation and consider at a later time whether or not to file a Rule 35. So it is our position, Your Honor, that the record clearly supports the finding that the district court in granting a one-level departure did so with an eye towards the prosecutor making a potential Rule 35 motion down the line, when, in fact, to do so would violate the temporal framework of Rule 35 and 5K1.1. There's clearly a still current existing distinction, significant distinction, and for Mr. Awad, unfortunately, the failure to exercise complete discretion and only partial discretion did infringe upon his due process rights. We respectfully urge the Court to order resentencing. Thank you. Thank you very much, counsel. The case just argued will be submitted for decision. And we will now hear argument in Caliendo v. Warden. Counsel, you may proceed. Thank you. Good morning, and may it please the Court. Please introduce yourself for the record, please. Ken Miller, Your Honor, on behalf of Mr. Gregory Caliendo. Thank you. The failure to apply a rebuttable presumption in this case was contrary to clearly established Supreme Court precedent. What I'd like to focus on is the Maddox Rule that requires when a government witness confers with a member of the jury during the trial that there is a rebuttable presumption of prejudice that arises from that. That was the Court's statement, the Supreme Court's statement in Maddox over 100 years ago that was recognized by the Seventh Circuit as the holding of Maddox. Okay. Well, the question is whether that is the establishment of a presumptive per se rule. And that seems to be where the disagreement arises. Your Honor, there's two cases. One is Turner, and that requires a per se finding of prejudice, a nonrebuttable presumption of prejudice. And then the Maddox Rule, as I formulated in my brief, requires a rebuttable presumption of prejudice. And the two presumptions apply in different situations. If it is a key witness who has intimate contact with the jury, then there is a conclusive presumption of prejudice under Turner. That was the Turner case where the bailiffs were key witnesses and they spent a great deal of time with the jury. So the Court held that when there was this longstanding intimate relationship with the jury, there was conclusive presumption of prejudice. That is one of Mr. Caliendo's claims. The second claim is, and I'm using claim loosely. I mean arguments. The second argument is that under Maddox, there wasn't a conclusive presumption, but there was a rebuttable presumption that the California Court of Appeal refused to apply in its decision. My question on that is, let me just say to both parties, I found a case and then I circled it. Nobody cited it. And I apologize for not bringing it to your attention earlier. But I didn't find it until recently. I apologize for not bringing it up. I'll just tell you what it is and then tell you what it says. It's Rinker v. Napa, 724, 1352. But basically, it adopts the Maddox formulation. And it says any unauthorized communication between a party or an interested third person and a juror creates a rebuttable presumption of prejudice. Okay. So just for talking purposes, let's say we have to go down the Maddox line instead of the Turner line. Yes, Your Honor. And it's a rebuttable presumption. Yes, Your Honor. But then the case goes on to say, rebuttal requires a strong contrary showing. Therefore, such communications, even if only possibly prejudicial, can only be acceptable where their harmlessness is made to appear. So my question is, let's say the California court ‑‑ oh, okay. Oh, excuse us. We'll try to reconnect. We'll reconnect. Let me test everything. Yes, Your Honor. We'll disconnect. We'll all turn to you back in now. Judge Cole, are you back on now? Yes, thank you. Can I ask, how much of the argument did you not hear? Beginning of Kelly and Doe. Beginning with what? The beginning of this case. All right. Counsel, this is highly unusual, but I wonder if you would indulge the Court and repeat your presentation. Absolutely, Your Honor. Word for word, of course. In light of Judge Hall's having been cut off somehow. No problem at all, Your Honor. All right. We'll start the clock again, Deputy Clerk. Restart the clock. Okay. We'll start all over again. Thank you, Your Honor. You have a little bit of an advantage now because you now know what's on Judge McKeown's mind, but go ahead. Ken Miller on behalf of Mr. Greg Colliendo. And the failure to apply a presumption of prejudice in this case was contrary to established Supreme Court law. The failure to apply a rebuttable presumption was contrary to Maddox. And the failure to apply a conclusive presumption was contrary to Turner. At the time that we were cut off, Judge McKeown had brought up the fact that none of us had cited a Ninth Circuit case that adopts the Maddox formulation, Rinker v. Napa, 724 F. 2nd, 1352. And I apologize if I'm going over my part of the argument. But I'm really interested in addressing the impact of a rebuttable presumption in this case. That's really my question. Yes, Your Honor. Let's just say the California court made a legal error. Yes. And it should have applied Maddox. And that's what the circuits also say. Yes. But under Maddox, the presumption can be rebutted. And then the California court did do a prejudice analysis of why they didn't really think this contact was prejudicial. Sure. My question, then, is if you can rebut the presumption, and if the California court made the prejudice analysis, why shouldn't we defer to the court's analysis on the prejudice issue, and then the legal issue kind of flies out the window because you end up back at prejudice anyway? Because if you don't apply the correct standard, then you don't get to the correct result, or at least the reliability of the result is so undermined that it is not entitled to any deference. A rebuttable presumption would have put the burden of proof on the AG to show that this was not prejudicial. And as pointed out by the magistrate judge, there was a great potential for prejudice in this case because the magistrate went through a number of factors. This was a critical witness. His credibility was crucial on the issue of whether or not the car was locked when Mr. Caliendo entered, and there was a lot of evidence that suggested it was already unlocked when it was entered. There was a readback of this testimony, and most important, I think, is that there was a prior hung jury in the case. The magistrate judge recognized all those things and said, well, we can't, I can't say that the, well, that's why. When the court applied the wrong standard, it's not entitled to deference. It would have been a different outcome if the AG would have had the burden of proof, if the AG would have had to have come forward and shown that there was no prejudice in this case. I think that the correct approach now is for the court to say we are not going to defer to the State Supreme Court because, or the State Supreme Court and the court of appeal because it did not apply the correct standard. We find a constitutional violation, then we go on to Brecht, whether or not there was substantial injurious impact on the verdict. That is a de novo determination now. And so this court can bring its own standards to bear and its own insight into, well, could you really have expected these jurors to come forward and admit that they were prejudiced? They had just been caught in violating the judge's orders. They're probably not, they lose a little credibility there since they have just flat-out violated what the judge asked them to do. And there's an incentive for them to minimize the impact of what they've done. From a legal standpoint, how have the cases analyzed jurors' disclaimers, if you will? I don't know. Okay. But that's the issue that I wanted to focus on today was the Maddox rule, and I think that it is clearly established law. Now you can, now there's the Ninth Circuit case, and I was focusing on the Seventh Circuit and the Fifth Circuit and the First Circuit. The essence of your argument is that the California Court of Appeal holding is not consistent with Maddox. Yes, Your Honor. Contrary to Maddox. Yes. In other words, under the AEDPA standard, that's. Contrary to. Very good. Yes, Your Honor. And then once you go past that, that there was a substantial and injurious impact on this, on the verdict. And if the Court is not inclined at this point to find prejudice, I would, I believe that there is a very strong showing of prejudice, particularly in light of the fact that there was a mistrial before the misconduct that went 7 to 5 in favor of acquittal. Mundell speaks with these jurors. There's no reason for him to even be there while he's doing it. And everything that he's, this is after, it's long after he's testified. It's long, it's after closing arguments. It's during deliberations. What is he doing hanging around outside the jury room speaking with these people? So I think. Especially when he's so busy. Especially when he is so busy. But he was attacked for his incompetence. And he was attacked because he got this statement without any written Miranda or without any written statement from Mr. Caliendo. But he is up there showing that, no, I'm not incompetent. I'm busy. You know, and the jurors are going, you know, everybody, all the work stacks up for everybody else when he's not in there. And the juror, I think, at number four is going, you know, you're doing a good job and I wouldn't want to be in your position. His attempts to ingratiate himself with this jury went directly to critical issues in this case. His competence and his credibility. And so I think this Court can find that there was a substantial injurious impact on this verdict. But if this Court does not feel it can find it now, I would request that the Court remand this for an evidentiary hearing. So because there hasn't been any testimony on what was he doing there. And is he biased against Mr. Caliendo? Those questions really stand out. But I do believe that there is enough to find the constitutional violation right now. And with that, I will submit and reserve the balance of my time. Thank you. May it please the Court. David Glassman, Deputy Attorney General for the Respondent. Before I begin with the discussion of what, in our view, the case is about, I would like to point out what it is not about. The case is here, and I just want to make sure I can be heard by Judge Hall. I can hear you. All right. Very good. The case is here on the claim, as the Court is aware, that the intrusion into the jury by the officer, constitute a constitutional violation. It is not, I believe, appropriate at this juncture to begin to reweigh the evidence of credibility and to request a remand for a credibility-based finding about witnesses that did testify before a lower court and whose credibility was evaluated by the State Trial Court. That issue, I submit, has been resolved. This Court now decides the question of law the case presents. The idea that there is some sort of bifurcated rule that the State Court in this case violated, I think, is clearly incorrect. The Turner case, distinguished by the District Court, applied to a very specific circumstance, and I'd like to quote the relevant language from that case. There, as this Court is aware, bailiffs supervising the jury had constant involvement with the jury during deliberations and were testifying witnesses in the underlying trial, a trial which resulted in a sentence of death. And the Supreme Court found that that situation was intolerable, stating, it would be blinking reality not to recognize the extreme prejudice inherent in this continual association. Throughout the trial between the jurors and these two key witnesses for the prosecution, we deal here not with a brief encounter but with a continuous and intimate association throughout a three-day trial. So clearly the Supreme Court in Turner confines itself to the circumstance that it was confronted with there. Turner did not announce any broad rule of per se reversible error on the subject of juror intrusion, and that is why Turner has not been understood to have applied such a rule. As recently as United States v. Olano, a Supreme Court decision about a decade ago, 507 U.S. 725, in which the Court says that the ultimate inquiry in a case of intrusion is whether or not the intrusion affected the deliberations or affected the verdict. Now, that issue was evaluated in this case, and ultimately I would submit two things. Number one, I believe you are correct, Judge McCown, and that is that we have under the AEDPA an inquiry as to whether or not the result in this case is contrary to Supreme Court authority. The result in this case is a finding by the State Appellate Court, confirmed by the District Court, that there was no prejudice in this case. Before we get to that, if we were to agree with you that Turner isn't applicable here for along the lines that you've argued, what is the State's position on Maddox and the rebuttable presumption? Well, as we indicate in our brief, Your Honor, there appears to be substantial disagreement in terms of exactly how a case of juror intrusion is analyzed. That is to say there has not been a model of clarity from the Supreme Court or other courts as to how these situations will be addressed in each instance. The case that the Court cited, that you cited, Judge McCown, Rinker v. Napa, admittedly not a case that I'm familiar with, but I would assert that based upon the formulation that the Court described as the holding of the case, that is a variation, that is an amalgamation of principles that come from a variety of places. That is not driven specifically by a Supreme Court holding, certainly not by Turner and not by Maddox. Well, you know, again, I don't like to bring cases to people's attention during argument having been on the other side of that not so long ago. So I don't pretend that that is a controlling case because it's not a Supreme Court case. It was just to clear up that the Ninth Circuit has interpreted Maddox consistent with the other circuits. So on Maddox, however, this is the language in that case, which is a Supreme Court case that I think we would need to address. It says private communications possibly prejudicial between jurors and third persons or witnesses or the officer in charge are absolutely forbidden and invalidate the verdict, at least unless their homelessness is made to appear. So is there any – there's no indication that the Supreme Court has retreated from that language, is there? I am not, as I stand here, aware of a specific retreat from that. But even if we determine, or if for the purposes of this argument I acknowledge that that is the standard, we then have the circumstances relied upon by the state of public court for deciding that this was harmless. My point about where the burden applies is that ultimately it's beside the point. Since the state court didn't refuse to engage in an evaluation of prejudice, it did so. And it found that, in fact, this was harmless. It made the following factual findings. This is a brief conversation lasting between 15 and 20 minutes. Nothing about the case is discussed. Nothing about counsel in the case, the evidence in the case, the petitioner in the case, the court. Each person who recalls the case, the incident individually, confirms that the subjects were baseball, the cost of food at the courthouse, exercise, the officer's workload, and when the jurors could go back into the courtroom. By the way, I'm not defending or countenancing the fact that the conversation took place, but it is important to look at exactly what was expressed there. Other jurors, those not involved, corroborate that that is all that was heard. And an attorney who was present, who overhears part of the conversation, an attorney not involved in the case, confirms the version of the people involved. The trial court asks each juror in the case if his or her judgment would be affected by the incident. Each juror says no. So ultimately, that is how the lack of prejudice is resolved in this case. And another question I have is for you to respond to Mr. Caliendo's argument, and that was that if the court applied the wrong standard, then in essence its benchmark was wrong, and you wouldn't give deference then to its analysis. What is your position on that? The point I was trying to make earlier, and not clearly enough, was that the ultimate inquiry in this case, as a case evaluated under the ADPA, is whether the result, not the analysis, but the result in this case, is an unreasonable application of these facts, based on the facts that I have just recited, which are undisputed in this case, or is a clearly incorrect application of Supreme Court precedent. Precedent which, by the way, not only did the State Appellate Court never engage in a in this kind of Supreme Court analysis that's been suggested here in this Court, nor did the district court. So that is to say, I don't think it's fair to say that there was a particular methodology for evaluating this claim that just escaped every court that looked at it. And when the district court specifically looked at it, the court agreed that the rule that was being asserted, namely a per se rule under Turner, did not apply here. But the better answer to your question, Your Honor, is that it is the result ultimately there we are looking at, which is a finding by a State Appellate Court that under the circumstances of this case, no prejudice resulted. I will ---- Your view is that Maddox permits that to the extent it used that harmlessness term in the passage that was read by Judge McKeown. Yes. Yes, indeed, Judge O'Scanlan. And more recently, the passage that I read from United States v. Olano at 507 U.S. 725 at 739, which says, the ultimate inquiry in a case of intrusion is whether the intrusion affected the deliberations or the verdict. One question on that, though, is Olano was not a constitutional case. That is, that is. And the Court made clear it wasn't a constitutional error case. So I'm not sure we want to go over to that part of the Supreme Court jurisprudence question. Except that I ---- normally that's the point I try to make, Your Honor, except that in that case, except that in Olano, the Court cites Turner v. Louisiana. So the point is that the Court is certainly cognizant of its constitutionally based jurisprudence. And, again, the Rinker case, for example, sounds as though it would have nothing to do with that aspect of Supreme Court precedent. Finally, the ---- on this question of prejudice, and I see my time is almost up, but I    And the fact that there is no precedent for prejudice in this case is really a completely speculative comparison by the Petitioner of the second trial, which resulted in a conviction, with the first trial. As if to say, well, the only difference at all was this improper communication with the jury. Mr. Miller? I take it, by the way, that the second issue in this case has been decided by Andrade? Yes, Your Honor. On page 49 of the excerpt of record, the California Court of Appeals states, The record as a whole discloses no reasonable probability of actual harm. I submit that is not the standard. That is a finding that Mr. Caliendo had not proven the standard that's applied to Brady violations and very close to the standard for IAC, reasonable probability. But that should not have been the standard in this case. The standard was, did the people rebut a presumption of prejudice? So the question that the California Court of Appeals answered was different than the question that they should have been answering, and that's the constitutional violation. What do you make of that little passage at the end of the quote read by Judge McKeown about unless harmlessness shall be shown? In Maddox. I'm talking about Maddox. Yes, Your Honor. That means it's a rebuttable presumption. It means that, and that's the way it's been interpreted, is that there is a presumption of prejudice unless the people can come and show that it is harmless. It is their burden to prove harmlessness. And your position is that the Court of Appeal in California flipped the presumption. They did. And they refused to apply a presumption. On page 49 of the excerpt of record, it's there. We do not presume any prejudice from the incident is the end of the second paragraph of that opinion. So, yeah, my point is, yes, Your Honor. In the end, does it make any difference? Yes, it does. It makes a huge difference. Because if this Court reviews this de novo, it will find that there was prejudice here because contrary to the AG's position, that prior hung jury, which hung 7-5, on the same evidence. And the evidence in this case is that it was the same. There's a declaration in the record from defense counsel. That is pretty probative of the changed circumstance. If this hadn't happened, then you could, you know, it's not like he's entitled to an acquittal because he got a hung jury the first time. But there's some serious misconduct that happens here in between. How do we deal with the findings of fact made by the State trial judge that whatever was said had nothing to do with the trial? Those findings of fact were based on, well, for one, they didn't actually have anything to do with whether or not he was in the truck or anything like that. But they – the State trial court was answering a different question. The State trial court was answering the question, has defendant shown prejudice? And the State trial court said, based on what you've got here, you haven't shown it. See? You've got these statements. These jurors say that they weren't affected. And these jurors say that this didn't have anything to do with what was going on. But the court was asking different questions than need to be asked now. So I don't believe that they're – that they resolved this. And with that, I will submit. Thank you. Thank you very much, counsel. The case just argued will be submitted for decision.
judges: Hall, O'scannlain, McKeown